UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VILMA ZENELAJ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>HANDYBOOK INC.,<br><br>    Defendant. | Case No. 14-cv-05449-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

This matter is before the Court on Defendant's motion to compel the arbitration of Plaintiffs' complaint. After carefully considering the arguments presented in the Parties' written and oral submissions, Defendant's motion to compel arbitration is hereby GRANTED, for the reasons set forth below.

**BACKGROUND**

Defendant Handybook is a technology company that offers an online platform through which customers in need of cleaning services can connect to independent cleaning professionals. Plaintiffs Vilma and Greta Zenelaj are independent cleaning professionals and users of this platform that have filed a class action lawsuit alleging that cleaners using the platform are misclassified as independent contractors, unlawfully denying them access to the employment benefits and protections required by California law. Oct. 30, 2014 Compl. (Docket No. 1-1). As a result of this misclassification, Plaintiffs allege that Defendant failed to pay overtime and minimum wages, reimburse required business expenses, provide meal periods and rest periods, furnish accurate itemized wage statements, pay earned wages upon discharge, and remit gratuities. Plaintiffs additionally allege that Defendant engaged in unfair business practices. Finally, the Complaint seeks penalties under the Private Attorneys General Act ("PAGA") for violations of the California Labor Code.

On December 15, 2014, Defendant removed this action to federal court based on diversity jurisdiction. (Docket No. 1). On December 22, 2014, Defendant filed the present motion to compel arbitration of Plaintiffs' claims. (Docket No. 8). Plaintiffs responded (Docket No. 16), and Defendant timely replied (Docket No. 17). On February 23, 2015, the Court heard oral argument on Defendant's motion.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Accordingly, a party to an arbitration agreement can petition a United States District Court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In addition, the FAA contains a mandatory stay provision. *Id.* § 3.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). Nonetheless, arbitration "is a matter of consent, not coercion." *Volt*, 489 U.S. at 479. In accordance with this principle, the Supreme Court has held that parties may agree to limit the issues subject to arbitration, and to arbitrate according to specific rules. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Volt*, 489 U.S. at 479.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted). A court must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

1 covers the asserted dispute," and "doubts should be resolved in favor of coverage." *AT&T*
2 *Tech, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

**DISCUSSION**

Plaintiffs argue that the arbitration provision of the Parties' Agreement is unconscionable and cannot be enforced. Opp'n at 9-23. Plaintiffs further argue that even if the arbitration provision is valid, their employment misclassification claims are not covered by the provision because they do not "relate to" the Agreement. *Id.* at 3-6.

Conversely, Defendant contends that this Court cannot decide whether the arbitration provision in this case is unconscionable or applicable, because the arbitration provision delegates those threshold issues to an arbitrator. Mot. at 7. In light of prevailing case law, this Court is obligated to agree. Consequently, the Court need only determine whether Defendant's assertion of arbitrability is "wholly groundless." *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law). The Court finds that it is not. However, the Court also finds that the Agreement's waiver of Plaintiffs' representative PAGA claims is invalid under state law, although an arbitrator must determine the proper forum in which those representative claims should proceed.

**I.  The Scope, Validity, and Application of the Arbitration Provision Must Be Decided by the Arbitrator.**

Generally, in deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witters Reynolds*, 537 U.S. 79, 84 (2002). However, these gateway issues can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise." *AT&T*, 475 U.S. at 649 (emphasis added); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."). In cases where the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an

3

arbitrator," a court's inquiry is "limited ... [to] whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law).

Defendant contends that the Parties "clearly and unmistakably" agreed to allow an arbitrator to decide the arbitration provision's validity, scope, and application, because the arbitration provision expressly incorporates the AAA Commercial Arbitration Rules.[1] Mot. at 7. Within the AAA Rules, Rule 7(a) delegates all jurisdictional questions, including arbitrability and validity, to the arbitrator.[2] Plaintiffs respond that a mere reference to the AAA Rules does not constitute a "clear and unmistakable" agreement to arbitrate arbitrability in the context of this case. Opp'n at 7. Plaintiffs additionally argue that the Ninth Circuit decision on point limits delegation by incorporation to "sophisticated parties." *Id.*

The Court recognizes that the question of whether the incorporation of the AAA Rules is *always* "clear and unmistakable" evidence of the parties' intent to arbitrate arbitrability is not a clearly settled question of law in the Ninth Circuit. Nonetheless, the overwhelming consensus of other circuits, as well as the vast majority of decisions in this district, support Defendant's claim that, in the context of this case, incorporation of the AAA Rules effectively delegates jurisdictional questions, including arbitrability and validity, to the arbitrator.

In *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013), the Ninth Circuit determined that incorporation by reference to a set of rules analogous to the AAA Rules delegated jurisdictional questions to an arbitrator. *Id.* at 1073-75. Specifically, *Oracle America* held "that as long as an arbitration agreement is between

---

[1] The Agreement provides, in relevant part: "The arbitration will be commenced and conducted under the Commercial Arbitration Rules (the 'AAA Rules') of the American Arbitration Association ('AAA') and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ('AAA Consumer Rules'), both of which are available at the AAA website www.adr.org." Ex. A to Dua Decl. at 5-6 (Docket No. 8-1).
[2] Rule 7(a) states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

4

1   sophisticated parties to commercial contracts, those parties shall be expected to understand
2   that incorporation of the UNCITRAL rules delegates questions of arbitrability to the
3   arbitrator." *Id.* at 1075. Plaintiffs rely upon this language to argue that delegation of
4   arbitrability through incorporation of the AAA Rules is *only* effective where the parties are
5   sophisticated. Opp'n at 7. However, when read as a whole, *Oracle America* does not
6   appear to foreclose a finding of clear and unmistakable delegation of arbitrability in other
7   contexts. In fact, the reasoning provided by the court suggests just the opposite.

8         In arriving at its narrowly worded holding, *Oracle America* notes: "Virtually every
9   circuit to have considered the issue has determined that incorporation of the American
10  Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable
11  evidence that the parties agreed to arbitrate arbitrability." *Id.* at 1074 (citing *Petrofac, Inc.
12  v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Republic
13  of Argentina v. BG Group PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012); *Fallo v. High–Tech
14  Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366,
15  1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th
16  Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005)); *see
17  also Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10–12 (1st Cir. 2009) (finding same); *but
18  see Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 777 & n. 1, 780 (10th
19  Cir. 1998)). Importantly, none of these cases limit themselves to sophisticated parties.

20        Furthermore, before providing the narrow language of its holding, *Oracle America*
21  stated: "We see no reason to deviate from the prevailing view that incorporation of the
22  UNCITRAL arbitration rules is clear and unmistakable evidence that the parties agreed the
23  arbitrator would decide arbitrability." *Id.* at 1074-75. It is therefore an appropriate
24  interpretation of *Oracle America* that the Ninth Circuit issued a narrow holding limited to
25  its facts - sophisticated parties to a commercial contract - but favorably acknowledged the
26  "prevailing view" expressed in the cited cases, all of which found clear and unmistakable
27  delegation of arbitrability regardless of the parties' sophistication.
28

5

This understanding of *Oracle America* is additionally supported by nearly every subsequent decision in the Northern District of California, which has consistently found effective delegation of arbitrability regardless of the sophistication of the parties. *See, e.g.*, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:14-CV-02510-SC, 2014 WL 7206620, at *4 (N.D. Cal. Dec. 18, 2014) (finding delegation in the context of antitrust litigation); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. 12–CV–05797–SBA, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014) (same, in online loan agreement); *Crook v. Wyndham Vacation Ownership, Inc.*, No. 13–CV–03669–WHO, 2013 WL 6039399, at *4, 16 (N.D. Cal. Nov. 8, 2013) (same, in time share agreement). Despite all being issued after *Oracle America*, none these cases applied a "sophisticated parties" limitation, and all of them found that a contract's application of the AAA Rules "clearly and unmistakably" delegated questions of arbitrability to the arbitrator.

Moreover, these post-*Oracle America* decisions by the Northern District of California largely comport with the pre-*Oracle America* decisions in this district. *See, e.g.*, *Kimble v. Rhodes Coll., Inc.*, No. 10-5786-EMC, 2011 WL 2175249, at *2-4 (N.D. Cal. June 2, 2011) (finding that reference to the AAA Rules manifests "clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability"); *Clarium Capital Mgmt. LLC v. Choudhury*, No. 08–5157-SBA, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009) ("When the arbitration agreement explicitly incorporate[s] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *Visa USA, Inc. v. Maritz, Inc.*, No. 07–05585-JSW, 2008 WL 744832 (N.D. Cal. Mar. 18, 2008) (holding the same); *Anderson v. Pitney Bowes, Inc.*, No. 04-4808-SBA, 2005 WL 1048700, at *2-4 (N.D. Cal. May 4, 2005) (same).

This articulation of the rule is also found in a number of notable California state court cases. *See, e.g.*, *Rodriguez v. American Technologies, Inc.*, 136 Cal. App. 4th 1110, 1123 (2006) (holding that although the scope of an arbitration clause generally is a question for the court, parties clearly and unmistakably agreed to have the arbitrator

6

1 determine the scope of the clause where the contract mandated arbitration in accordance
2 with AAA Rules); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 550
3 (2004) (same).

4 Consequently, when viewed within the context of the decision's reasoning, as well
5 as the great weight of prevailing case law, it is likely that while *Oracle America*'s holding
6 limited itself to sophisticated parties, it does not support Plaintiffs' contention that *only*
7 sophisticated parties can "clearly and unmistakably" delegate the issue of arbitrability by
8 incorporating the AAA Rules. Put another way, *Oracle America* does not foreclose the
9 possibility that unsophisticated parties can clearly and unmistakably delegate arbitrability
10 to an arbitrator through the incorporation of the AAA Rules.

11 However, this issue is not without argument to the contrary. In a recent decision in
12 this district, Judge Lucy Koh wrote that *Oracle America* "expressly limited its holding" to
13 (1) commercial contracts (2) that are between sophisticated parties. *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014).
15 Although dicta,[3] *Tompkins* went on to explain:

> There is good reason not to extend this doctrine from commercial contracts between sophisticated parties . . . . Indeed, the Supreme Court held that by default, courts should decide arbitrability because the question of "who (primarily) should decide arbitrability" is "rather arcane," and "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." The "clear and unmistakable" test thus established a "heightened standard" to evince delegation.

21 *Id.* (internal citations omitted). *Tompkins* also noted that in at least one decision, a
22 California Court of Appeal has expressed "strong doubts" about whether a "mere
23 reference" to these rules provides adequate notice to an individual employee. *Id.* (citing
24 *Ajamian v. CantroCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (2012)).

---

[3] *Tompkins* ultimately found a lack of "clear and unmistakable" evidence of the parties' intent to delegate arbitrability because of the nature of the contract, not the sophistication of the parties.

7

1    Additional support for this position is found in *Moody v. Metal Supermarket*
2    *Franchising Am., Inc.*, No. 13–CV–5098–PJH, 2014 WL 988811 (N.D. Cal. Mar. 10,
3    2014). In that case, while the court did not cite *Oracle America* or even address the
4    sophistication of the parties, it nonetheless refused to find the delegation of arbitrability in
5    a series of franchise agreements because the "agreements themselves d[id] not quote this
6    portion of Rule 7, nor d[id] they even refer specifically to Rule 7." *Id.* at *10. *Moody*
7    determined that a reference to the "then current commercial arbitration rules of the AAA"
8    was insufficient evidence of "clear and unmistakable" intent to delegate arbitrability,
9    contrasting the contract's language with an express delegation provision that directly
10   quotes Rule 7. *Id.* at *11.

11   Despite the analysis provided in *Tompkins* and *Moody*, those cases are nonetheless
12   at odds with the prevailing trend of case law as described above. Further, *Tompkin*'s
13   discussion of the alleged "sophisticated parties" limitation was merely dicta, and *Moody*
14   neither references *Oracle America* nor discusses sophistication. Consequently, regardless
15   of their sophistication, the Court finds that the Parties in this case clearly and unmistakably
16   delegated the question of arbitrability to the arbitrator when they expressly incorporated
17   the AAA Rules into their Agreement. As a result, any questions regarding the arbitration
18   provision's validity, scope, or application to this dispute must be decided by the arbitrator.

19   Should the Ninth Circuit clarify its decision in *Oracle America* and expressly limit
20   delegation by incorporation to sophisticated parties, it is unclear whether this Court would
21   decide the issue differently. *Oracle America* provided no guidance to the district courts on
22   how to determine whether a party is sufficiently "sophisticated," and similar discussions of
23   sophistication in other legal contexts is largely unhelpful. Certainly, Plaintiffs are not as
24   sophisticated as the large corporations that litigated the case in *Oracle America*. However,
25   Defendant contends that Plaintiffs are experienced businesswomen, in addition to
26   professional cleaners, and can therefore be expected to have some level of sophistication in
27   the area of employment contracts. Reply at 3-4. At the hearing, this Court raised a
28   number of questions, including whether the involvement of experienced attorneys imputes

8

sophistication to the parties, and whether the parties need to be experienced in the area of contract law, or merely in the handling of contracts. All of these questions remain. For the moment, however, this Court finds insufficient support to interpret *Oracle America* in the uniquely restrictive manner suggested by Plaintiffs, and therefore leaves these difficult questions for another day.

## II. Defendant's Claim of Arbitrability Is Not Wholly Groundless.

In cases where the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator," the district court's inquiry is "limited . . . [to] whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law) (citing *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547 (2004)). The "wholly groundless" inquiry allows the court to prevent a party from "asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." *Id.* at 1373 n.5. In conducting this inquiry:

> [T]he district court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration. Because any inquiry beyond a "wholly groundless" test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by in the [agreement], the district court need not, and should not, determine whether [plaintiff's claims] are in fact arbitrable. If the assertion of arbitrability is not "wholly groundless," the district court should conclude that it is "satisfied" pursuant to section 3 [of the FAA].

*Id.* at 1374. If a court finds that the assertion of arbitrability is not "wholly groundless," it should stay the action pending a ruling on arbitrability by the arbitrator. *Id.*

The arbitration provision in this case is broad, providing the arbitration of "any dispute, controversy or claim related to this Agreement." Ex. A to Dua Decl. at 5 (Docket No. 8-1). A review of the complaint does not foreclose the possibility that Plaintiffs' claims relate to the Agreement. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the

9

1   arbitration clause is not susceptible of an interpretation that covers the asserted dispute.
2   Doubts should be resolved in favor of coverage.").

3         Plaintiffs' dispute could plausibly "relate to" the Agreement for a number of reasons. First, Plaintiffs assert that they were employees of Defendant when they provided cleaning services arranged through Defendant's platform, while the Agreement expressly disclaims the existence of an employment relationship, stating: "Handybook.com is not an employment service and does not serve as an employer of any User." Ex. A to Dua Decl. at 3. Second, Defendant "supplies a medium for the exchange of money," including the money paid to Plaintiffs, and the Agreement is the only contract that governs this exchange. *Id.* at 2. Plaintiffs' claims relate, in part, to the money they earned or were entitled to for the cleaning services they offered through Defendant's platform. Finally, much of the evidence that will be considered to determine whether Plaintiffs were properly classified as independent contractors is found in the provisions of the contract, including clauses that detail Defendant's right to terminate Plaintiffs' employment, Plaintiffs' right to and method of payment, and Defendant's liability for disputes between Plaintiffs and individual clients. *See S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341, 350-51 (1989) (providing factors considered in employment classification).

      Plaintiffs respond by highlighting cases that found employment misclassification claims were not covered by the disputed contract's choice-of-law and forum selection provisions. Opp'n at 4-6 (citing *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010); *Cotter v. Lyft, Inc.*, No. 13-04065-VC, 2014 3884416 (N.D. Cal. Aug. 7, 2014); *Quinonez v. Empire Today, LLC*, No. 10-02048-WHA, 2010 WL 4569873 (N.D. Cal. Nov. 4, 2010)). The essential reasoning of these decisions was that employment misclassification claims are statutory in nature and therefore do not concern, and are not governed by, the underlying contract. While this reasoning is compelling, and may indeed be convincing to the arbitrator, it can be argued that choice-of-law and forum selection provisions do not benefit from the same strong presumption that favors the arbitration of disputes. *See, e.g.*,

10

*Mortensen v. Bresnan Comm'n, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) ("[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions.").

Because the Court has found that an arbitrator should determine the issue of arbitrability, it reserves judgment as to whether the arbitration provision actually covers Plaintiffs' causes of action, applying instead the "wholly groundless" standard required by case law. To this end, the Court finds that Defendant's argument that the preferential nature of arbitration provides some basis for a finding that the employment misclassification claims "relate to" the Parties' Agreement is not "wholly groundless." However, this should not be interpreted as the Court endorsing Defendant's position, as it might have arrived at a different conclusion under a less forgiving standard. Nonetheless, the Court must now consider whether the Agreement's class and representative action waivers change this assessment.

## III. The Class Arbitration Waiver is Valid.

The Ninth Circuit has expressly endorsed sending individually named plaintiffs' claims to arbitration despite class allegations, and has found class waivers in arbitration agreements enforceable. *Murphy v. DirectTV, Inc.*, 724 F.3d 1218, 1226 (9th Cir. 2013) ("Section 2 of the FAA, which under *Concepcion* requires the enforcement of arbitration agreements that ban class procedures, is the law of California and of every other state."); *accord Kairy v. Supershuttle, Int'l*, No. 08-02993-JSW, 2012 WL 4343229, at *3 (N.D. Cal. Sept. 20, 2012) ("[C]ourts must compel arbitration even in the absence of the opportunity for plaintiffs to bring their claims as a class action.").

The arbitration provision at issue in this case contains a valid class action waiver. Ex. A to Dua Decl. at 6 ("To the full extent permitted by law, (a) no arbitration will be joined with any other; (b) there is no right or authority for any Dispute to be arbitrated on a class-action basis or to utilize class action procedures[.]"). Consequently, if the arbitrator determines that Plaintiffs' substantive claims are arbitrable (*i.e.*, that they "relate to" the Agreement), named Plaintiffs can be required to arbitrate their claims on an individual

11

basis. Accordingly, the class claims are stayed pending a decision on arbitrability by the arbitrator.

### IV. The Representative Action Waiver is Invalid.

In addition to the class action waiver, the Agreement in this case also contains a representative action waiver. Ex. A to Dua Decl. at 6 ("To the full extent permitted by law . . . there is no right or authority for any Dispute to be brought in a purported representative capacity on behalf of the general public or any other persons."). Defendant contends that this waiver requires the Court to dismiss Plaintiffs' representative PAGA claims. Mot. at 13-15. Conversely, Plaintiffs argue that the waiver is invalid under state law, and the representative PAGA claims should proceed in this Court. Opp'n at 24-25.

The Private Attorneys General Act permits individuals to bring representative claims for an employer's violation of the California Labor Code. Cal. Lab. Code §§ 2699 et seq. These individuals essentially act as private attorneys general, and can seek penalties for violations "that could otherwise only be assessed by California's Labor and Workforce Development Agency." *Cunningham v. Leslie's Poolmart, Inc.*, No. 13-2122-CAS, 2013 WL 3233211, at *5 (C.D. Cal. June 25, 2013). In *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014), the California Supreme Court held that arbitration agreements cannot waive the ability to pursue representative PAGA actions because a "PAGA representative action is . . . a type of *qui tam* action," and the "government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit." *Id.* at 382. Responding to the argument that the Federal Arbitration Act preempts the state policy invalidating PAGA waivers, the court concluded "that the rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency." *Id.* at 384 (emphasis in original).

12

1      Defendant correctly asserts that this Court is not bound by *Iskanian* and cites a
2 number of decisions in this circuit that have declined to follow the California Supreme
3 Court. Mot. at 14 n. 4 (compiling cases). The cases cited by Defendant have generally
4 found that California's policy barring representative PAGA waivers frustrates the
5 objectives of the FAA, which is prohibited by *AT&T Mobility LLC v. Concepcion*, 131
6 S.Ct. 1740, 1751 (2011). This Court disagrees.
7      Defendant identifies two decisions from the Northern District of California that
8 have found California's policy preempted by the FAA. Mot. at 14 (citing *Parvataneni v.*
9 *E\*Trade Fin. Corp.*, 967 F.Supp.2d 1298 (2013)); Def.'s Admin. Mot. at 2 (Docket No.
10 21) (citing *Estrada v. CleanNet USA Inc., et al.*, No. 14-01785-JSW (N.D. Cal. Feb. 24,
11 2015)). In response, Plaintiffs' cite to a recent decision in this district that determined
12 California's policy was not preempted by the FAA. Pls.' Stmt. of Recent Decision at 1
13 (Docket No. 18) (citing *Hernandez, et al. v. DMSI Staffing, LLC, et al.*, No. 14-1531-EMC,
14 2015 WL 458083 (N.D. Cal. Feb. 3, 2015)). The Court is therefore presented with
15 persuasive authority in support of either outcome. After careful consideration, and with
16 full awareness that this issue may soon be resolved by the Ninth Circuit Court of Appeals,
17 this Court chooses to follow Judge Chen's well-reasoned decision in *Hernandez*.
18      In *Hernandez*, the court agreed with *Iskanian*'s conclusion that the FAA does not
19 preempt California's policy barring PAGA waivers, and found that *Concepcion*, which
20 was about class action waivers, does not apply. *Id.* at *6. The court explained that
21 *Concepcion* was focused on the largely procedural attributes of class actions that make
22 them inconsistent with the FAA's objective of ensuring the efficient resolution of disputes
23 - attributes that are not shared by PAGA actions. *Id.* (citing *Concepcion*, 131 S.Ct. at
24 1751); *Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117, 1123 ("[U]nlike Rule 23(a),
25 PAGA contains no requirements of numerosity, commonality, or typicality."). *Concepcion*
26 emphasized the formality of class certification, such as the requirement for the opportunity
27 to be heard and opt-out rights - time-consuming processes that frustrate the objectives of
28 the FAA and are not present in representative PAGA actions because PAGA does not bind

13

other employees. *Hernandez*, 2015 WL 458083, at *6 (citing *Concepcion*, 131 S.Ct. at 1751); Cal. Lab. Code § 2699(g)(1). Consequently, *Hernandez* reasoned, "[t]he due-process-related procedural requirements of formal class actions do not obtain in PAGA representative actions. Thus, the *Iskanian* rule against waiver of PAGA claims does not threaten to undermine the fundamental attributes of arbitration." 2015 WL 458083, at *6.

In addition to the many reasons that PAGA waivers are not analogous to class action waivers, and therefore not contemplated by *Concepcion*, PAGA claims cannot be waived because of their unique *qui tam*-like nature and the manner in which they implicate federalism concerns. *Herandez* explained that the real party in interest in a PAGA claim is the state, not the parties that concede to the waiver and agree to arbitration. *Id.* at *7. Where the objective of the FAA is to guarantee the efficient resolution of *private* disputes, that objective is not frustrated when the dispute is between the employer and the State, as with PAGA claims. *Id.* (explaining that in a PAGA action, the government exercises initial control over the action, receives the lion share of the statutory recovery, and is bound by any judgment obtained). Finally, *Hernandez* noted the federalism concerns that strongly advise against a finding of preemption in this context, explaining that "[l]abor law enforcement falls squarely within a state's police powers." *Id.* at *8-9 (citing *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985)). Like the court in *Hernandez*, this Court is hesitant to intrude upon the State's law enforcement activities, which are "central to state sovereignty." *Metro Life Ins. Co.*, 471 U.S. at 756; *see also Printz v. United States*, 521 U.S. 898, 928 (1997) ("It is an essential attribute of the States' retained sovereignty that they remain independent and autonomous within their proper sphere of authority.").

The Court therefore concludes that barring the waiver of representative PAGA claims and requiring such claims to be arbitrated does not interfere with the objectives and fundamental attributes of arbitration as provided in the FAA. *Cf. Concepcion*, 131 S.Ct. at 1748. Defendant in this case has not shown that arbitration of these claims would be particularly complex, cumbersome, time-consuming, or expensive. Furthermore, where

14

federalism concerns weigh heavily upon the Court's determination, absent clear direction from the Ninth Circuit, the Court denies Defendant's request to enforce the waiver of Plaintiffs' representative PAGA claims.

As noted by *Hernandez*, "The fact that the waiver provisions of the arbitration clauses at issue cannot be enforced to bar PAGA representative claims does not necessarily dictate which forum is proper for their adjudication." *Hernandez*, 2015 WL 458083, at *9. While the arbitration clause at issue in this case is broadly constructed, the inclusion of the representative action waiver suggests that the Parties did not anticipate that PAGA representative claims would be arbitrated. *See id.* (citing *Iskanian*, 59 Cal. 5th at 391). While it sounds in reason to the Court that these representative claims should not be subject to arbitration, as the real party in interest is a third party (the State of California), which did not concede to the arbitration of its disputes, the question of arbitrability is nonetheless left to the decision of the arbitrator, pursuant to AAA Rule 7(a). Accordingly, Plaintiffs' representative PAGA claims are stayed along with the rest of this action, pending a decision on arbitrability of those representative claims by the arbitrator.

**CONCLUSION**

In light of the Parties' decision to conduct the resolution of their dispute in accordance with the AAA Commercial Rules, the Court leaves the question of arbitrability to be decided by the arbitrator in accordance with the clear and unmistakable intent of the Parties as defined by prevailing case law. Additionally, the Court finds that the Agreement's waiver of Plaintiffs' statutory right to pursue representative PAGA claims is invalid as a matter of state law. However, as with the other causes of action asserted by Plaintiffs, the arbitrability of these representative claims must be decided by an arbitrator. Therefore, the Court hereby GRANTS Defendant's motion to compel arbitration.

Additionally, in accordance with Section 3 of the FAA, the Court STAYS these proceedings pending a decision on arbitrability by the arbitrator. The Parties shall file a

joint status statement within **one week** of the arbitrator's decision on arbitrability or by **June 1, 2015**, whichever is sooner.

**IT IS SO ORDERED.**

Dated: 03/03/15

_____
THELTON E. HENDERSON
United States District Judge